968 A.2d 154 (2009)
408 Md. App. 703
Georgia TRIANTIS
v.
Ottis Gus TRIANTIS, et al.
No. 963, September Term, 2007.
Court of Special Appeals of Maryland.
March 26, 2009.
*155 Richard D. Daniels (Daniels & Green, LLC on the brief), College Park, for Appellant.
Ellie J. Koch, Rockville, for Appellee.
Panel: KRAUSER, C.J., ZARNOCH, and SALLY D. ADKINS,[*] JJ.
KRAUSER, Chief Judge.
We are asked to decide whether the holder of an equitable interest in real property may sue for partition or sale in lieu of partition of that parcel of property under section 14-107(a) of the Real Property Article of the Maryland Code ("RP") (1974, 2003 Repl.Vol.). Georgia Triantis, appellant, claims that she has an equitable interest in a forty-acre parcel of property that is jointly titled in the names of her former husband, Ottis Gus Triantis, and Konstantinos Stamoulis and his wife, Ourania Stamoulis, appellees. Invoking that *156 interest, Mrs. Triantis brought an action in the Circuit Court for Montgomery County to compel the sale, in lieu of partition, of that property (the "Parcel").
The circuit court granted summary judgment in favor of Mr. Triantis and his co-owners, the Stamoulises, holding that Mrs. Triantis lacked standing to bring such an action because she had no more than an equitable interest in the Parcel. In reaching that conclusion, the court construed RP section 14-107(a) to preclude those who hold only an equitable interest in a property from bringing a partition action. Mrs. Triantis now asks us to decide whether she must have legal title to a property before she may seek partition of it and, if not, whether her equitable interest was sufficient to give her standing to bring such action.
We conclude that RP section 14-107(a) permits a person who holds an equitable interest, as a concurrent owner, to bring an action for partition of that real property or to compel its sale in lieu of partition. Because the motion court did not reach the question of whether Mrs. Triantis had such an interest in the property at issue, we vacate the judgment and remand for further proceedings.

Factual Background
Georgia and Gus Triantis married in 1955. Twenty-nine years later, while the couple was still married, Mr. Triantis and Konstantinos Stamoulis purchased approximately forty acres of land in Montgomery County, taking title as tenants in common. A deed, dated September 5, 1984, was recorded in the land records for Montgomery County, stating that each held an undivided one-half interest in fee simple. Some time later, Mr. Stamoulis conveyed his undivided one-half interest in the Parcel to his wife, Ourania, and himself, as tenants by the entirety.
During their marriage, Mr. and Mrs. Triantis acquired other parcels of property. Some parcels were titled in just Mr. Triantis's or Mrs. Triantis's name; others were titled in both of their names; and still others were jointly titled in either Mr. or Mrs. Triantis's name and the name of a third party.
By 2000, Mr. and Mrs. Triantis had separated and were living apart. On June 1, 2000, they executed a written agreement (the "Agreement") "to evidence their intent, agreement, and understanding as to the ownership, management, maintenance, repair, operation and sale" of their numerous properties, including the Parcel. Those properties were referred to collectively in the Agreement as the "Property."
According to paragraph one of the Agreement, the Property (which included the Parcel) was to be treated as jointly owned by both Mr. and Mrs. Triantis, even when Mrs. Triantis was not on the title. That provision states:
The parties agree that all of the Property, and any interests therein, whether held in the name of one party or the other, or by the parties jointly, or in the name of or with a third party, or in the name of or with a third party entity, was acquired by and for the parties jointly, and for the benefit of both equally. ... In making this Agreement, the parties acknowledge and agree that each is the joint legal and/or equitable owner of the Property, notwithstanding the fact that the Property, or any one or more assets or interests which make up the Property, may be titled in the name of one party or the other, individually, or in the name of the parties jointly, and notwithstanding the fact that one or more items making up the Property or *157 any interest therein, may be held with... a third party ....
(Emphasis added.)
Paragraph five of the Agreement states that Mr. and Mrs. Triantis "will use reasonable commercial efforts to market and sell the Property." This provision requires that contracts for the sale, lease, or brokerage of the Property be approved by both parties and that such approval "may not be unreasonably withheld, delayed, or conditioned." It then specifically authorizes Mr. Triantis, "subject to the receipt of written consent" of Mrs. Triantis, to "retain the services of any real estate broker, leasing agent or other real estate professional necessary or desirable to sell or lease the Property." In paragraph seven, "the parties agree[d] to deal with one another in good faith and ... to execute and deliver any and all documents necessary to... maintain, operate, market, sell, or lease the Property."
Although the Agreement contains an integration clause in paragraph 12, stating that it "constitutes the entire agreement of the parties relating to the subject matter hereof," paragraph 20 cautions that "this Agreement is not intended to be a full resolution of their respective marital and property rights, which the parties intend to be addressed in a separate property agreement." We have no information before us about any subsequent agreement. Although Mr. and Mrs. Triantis divorced some time after the Agreement was executed, the record does not disclose when that actually occurred or whether a subsequent agreement was entered into by the parties.
On April 4, 2002, the Agreement was recorded in the land records for Montgomery County, not as a deed, but simply as an "agreement." On December 6, 2006, Mrs. Triantis filed a complaint in the circuit court, requesting that the Parcel be sold in lieu of partition. That complaint was met by a motion for summary judgment filed by appellees, claiming that Mrs. Triantis "lacked standing" to bring such an action because she did "not appear as a grantee in any deed vesting an ownership right in her." Only a person with a legal interest in property, established by a duly recorded deed, has standing, they maintained, to bring a partition action under RP section 14-107. The court granted the motion "for the reasons that [appellees' counsel] sets forth in his oral argument and in his papers." This appeal followed.

Discussion

I.
Mrs. Triantis contends that the circuit court erred in granting summary judgment on the ground that the holder of an equitable interest in real property may not bring an action for partition or sale. Although appellees agree that an equitable interest in property may be partitioned, they renew the argument they made below that only a person with legal title to a property, as represented by a deed, has standing to bring a partition action.
To resolve this dispute, we turn first to the language of RP section 14-107(a), which provides in pertinent part:
A circuit court may decree a partition of any property, either legal or equitable, on the bill or petition of any joint tenant, tenant in common, parcener, or concurrent owner, whether claiming by descent or purchase. If it appears that the property cannot be divided without loss or injury to the parties interested, the court may decree its sale and divide the money resulting from the sale among the parties according to their respective rights.
(Emphasis added.)
When interpreting any statute, our task is to discern and implement the legislature's *158 intent. See Chesek v. Jones, 406 Md. 446, 458, 959 A.2d 795 (2008). We begin by examining the plain meaning of the language used by the General Assembly. See id. We "construe the statute as a whole so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory." Mayor of Oakland v. Mayor of Mountain Lake Park, 392 Md. 301, 316, 896 A.2d 1036 (2006). "[I]f the plain language of the statute is unambiguous and consistent with the statute's apparent purpose, we give effect to the statute as it is written." Id. "We consider both the ordinary meaning of the language of the statute and how that language relates to the overall meaning, setting, and purpose of the act." Id. "We avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense" or that requires us to "add or delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute." Chesek, 406 Md. at 459, 959 A.2d 795; Mayor of Oakland, 392 Md. at 316, 896 A.2d 1036.
Section 14-107(a) plainly authorizes partition of both legal and equitable interests in real property, because the phrase "either legal or equitable" clearly modifies the preceding word "property," and "property" in turn is defined by sections 1-101(k) as "real property or any interest thereon or appurtenant to."[1] Hence, it is clear that an equitable interest may be subject to partition. The question raised by this appeal, however, is whether, and under what circumstances, a person, who holds an equitable interest in real property, may petition the court for partition or sale of that property.
Section 14-107(a) seems to answer that question but only in broad and, hence, unedifying terms. It states that a circuit court may decree a partition of property "on the bill or petition of any joint tenant, tenant in common, parcener, or concurrent owner, whether claiming by descent or purchase." Thus, the dispute between the parties boils down to whether Mrs. Triantis's equitable interest in the Parcel qualifies her as a "concurrent owner" within the meaning of section 14-107(a).
Although neither side cites any caselaw to support its competing interpretation of the statute, the circuit court appears to have been persuaded by appellees' "mischievous consequences" argument, that is, that the "net effect" of permitting equitable interest holders such as Mrs. Triantis to compel partition "would be to permit *159 the purchaser in every real estate contract to immediately bring a partition suit even before the contract was fully performed." We do not agree with appellees' narrow reading of "concurrent owner" or find persuasive their prediction of "mischief."
The term "concurrent owner" is not defined in the Real Property Article or in any other provision of the Maryland Code or the Code of Maryland Regulations, and no Maryland case addresses the question of whether a holder of equitable interest in property can be a "concurrent owner" for purposes of section 14-107(a). Therefore, to determine whether an equitable interest holder can be a "concurrent owner," such that he or she has standing to bring a partition action, one must examine the meaning of that term in light of the legislature's intent to allow partition claims by such persons.
There is no indication that the legislature intended that the term "concurrent owner" be given a narrow construction, so as to prohibit an equitable resolution of a property dispute. We are therefore inclined to define that term broadly as simply two or more persons with contemporaneous interests in the same property. See, e.g., Black's Law Dictionary 586 (8th ed.2004) (defining "concurrent estate" as "[o]wnership or possession of property by two or more persons at the same time"); 2 Herbert T. Tiffany & Basil Jones, Tiffany on Real Prop. § 417 (database updated through Sept. 2008) (co-ownership exists when "two or more persons ... have undivided interests in the land; the common characteristic of all such interests being that the owners have no separate rights as regards any distinct portion of the land, but each is interested, according to the extent of his share, in every part of the whole land") (footnotes omitted).
The language of section 14-107(a) or of its statutory predecessors[2] does not suggest to us that the General Assembly intended the term "concurrent owner" to refer only to those who hold legal title. The construction advocated by appellees would require us read into the statute a restriction that simply is not there. Specifically, we would have to interpret the class of "concurrent owner[s]" who may file a "bill or petition" seeking partition to mean only "concurrent holders of legal title." (Emphasis added.)
Moreover, the history of Maryland's partition statute does not support such a narrow interpretation of concurrent ownership or otherwise suggest that the General Assembly intended that the term "concurrent owner" would operate to restrict the partition remedy to those holding legal title. Section 14-107(a) and its statutory predecessors codified the common law right to partition, historically an equitable remedy.[3] Given that courts of *160 equity have had jurisdiction over matters that were not cognizable at law and that the legislature expressly gave courts of equity the power to partition property, it is reasonable to infer that the legislature did not intend to bar holders of equitable interests in real property from seeking the equitable remedy of partition. Yet appellees ask us to conclude that for more than 200 years the General Assembly has given Maryland courts the power to partition equitable interests in real property but simultaneously closed the courthouse doors to the petitions of those who hold such interests. We reject such an anomalous interpretation.
We are persuaded that, when the equitable interest holder claims that she is a concurrent owner of real property that is actually titled in the names of other parties, she may file a lawsuit to establish her rights in the property and to request partition or sale. Cf., e.g., Bowers v. Baltimore Gas & Elec. Co., 228 Md. 624, 628, 180 A.2d 878 (1962) (having exercised jurisdiction to determine existence of easement giving rise to request for partition, court had jurisdiction to subsequently order partition); Lewis v. Lewis, 136 Md. 601, 609-10, 110 A. 885 (1920) (court of equity has jurisdiction to resolve dispute over ownership of property raised by defendant cotenant in the course of partition proceeding).[4] Indeed, that procedure is the simplest and most economical way to resolve the dispute over Mrs. Triantis's rights in the Parcel.
This approach is consistent with the well-reasoned view, adopted by commentators and other state courts, construing comparable partition statutes. Among these authorities, there appears to be general agreement that in certain circumstances the holder of an equitable interest may sue for partition. Although the right to demand partition is defined by the terms of the applicable state statute, one commentator has observed that
in a number of cases, ... one who has merely an equitable interest in an undivided share of certain land is entitled to demand partition, at least in a court of equitable jurisdiction, but whether he can do so properly depends on the character of the interest. In most of the cases referred to, the equitable interest of the plaintiff was such as to entitle him to demand a conveyance of the legal title, so that he was, in the view of a court of equity, in effect, the holder of such a title. And so it has occasionally been decided that one can, in the same proceeding, ask for specific performance of a contract to convey to him, and also partition.
Tiffany on Real Prop., supra, § 477 (footnotes omitted). See also id. § 478 (in a suit for partition, some jurisdictions permit a court of equity "to determine, in the partition proceeding, questions as to the legal title," and in all states "courts of equity will adjudicate in reference to the legal title if this involves merely a construction of the language of some particular instrument") (collecting cases). See, e.g., Murphy v. Shelby, 353 F.2d 418, 420 (8th Cir.1965) (recognizing that under Missouri law "a court of equity may establish *161 the interest of one claiming an equitable interest and may then proceed after determining the interest to order partition").
In our view, there is little danger that this procedure will give rise to the parade of problems predicted by appellees. To establish standing as a concurrent owner under the partition statute, an equitable interest holder, like Mrs. Triantis, must allege facts establishing she has a contemporaneous and fully vested ownership interest in the property.
Construing section 14-107(a) to encompass an equitable interest holder who has a fully vested right as a concurrent owner will not create the problems posited by appellees. Under such a construction, the statute still does not authorize partition by every holder of an equitable interest in real property. For example, section 14-107(a) does not permit partition by a mortgagee because the mortgagee's interest is a security interest, not a concurrent ownership interest. See, e.g., Van Dyk v. Bloede, 128 Md. 330, 97 A. 630 (1916) ("`a mortgagee of the undivided interest of one tenant in common has no right to file a bill for partition'") (citation omitted). Nor would partition be available to a contract purchaser of real property until all the sale terms are fulfilled, because the equitable interest that arises in that situation is not vested during the executory period of the contract. In neither of these circumstances can the equitable interest holder claim an existing ownership interest in the property. Accordingly, we hold that RP section 14-107(a) permits partition of an equitable interest in real property when that interest is held by a fully vested concurrent owner. Whether a petitioner has such an interest must necessarily be decided on a case-by-case basis. We now turn to the question of whether Mrs. Triantis may petition for a partition sale on the basis of her equitable interest in the Parcel.

II.
Mrs. Triantis bases her claim of concurrent ownership in the Parcel on the equitable interest in the Parcel granted to her by the Agreement. The second question raised in her appeal is whether she has "equitable title sufficient to give her standing to bring this partition action." The circuit court did not reach this question because it concluded that Mrs. Triantis's lack of legal title precluded her suit for partition, and our review is limited to that ruling. See, e.g., La Belle Epoque, LLC v. Old Europe Antidue Manor, LLC, 406 Md. 194, 209, 958 A.2d 269 (2008) (appellate review of summary judgment is limited to grounds upon which motion was granted).
Because we have held that legal title is not a prerequisite for partition, we remand this case for a determination of whether Mrs. Triantis has the sort of equitable interest that entitles her to bring a partition action. On remand, the court shall consider the parties' intentions as reflected in the Agreement and any subsequent agreements relating to the Parcel.
JUDGMENT VACATED.
CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.
NOTES
[*] Sally D. Adkins, now serving on the Court of Appeals, participated in the hearing and conference of this case while an active member of this Court; she participated in the adoption of this opinion as a specially assigned member of this Court.
[1] Indeed, Maryland has statutorily authorized partition of an equitable "right" or "interest" in real property for more than one hundred years. In 1860, the statutory predecessor of the current statute stated:

The court may decree a partition of any lands or tenements, or any right, interest or estate therein, either legal or equitable, on the bill or petition of any joint tenant, tenant in common, or any parcener, or concurrent owner, whether claiming by descent or purchase.
Former Md.Code (1860), Art. 16, § 99 (emphasis added). That language remained in the statute until it was recodified as part of the new Real Property Article. See former Md.Code (1957, 1973 Repl.Vol.), Art. 21, § 14-107 ("The circuit courts may decree a partition of any property, or any right, interest or estate or property, either legal or equitable."). It was in the recodification process that the General Assembly deleted the explicit reference to partitioning an equitable "right" or "interest" and adopted the current language authorizing "[a] circuit court [to] decree a partition of any property, either legal or equitable." In deleting the words "any right, interest, or estate," however, the Revisors disclaimed any substantive change, explaining that
the present reference to "any right, interest or estate or property" is proposed for deletion as unnecessary in light of the preceding reference to "property" and the definition in § 1-101(k).
1974 Md. Laws, ch. 12 (Revisors' note).
[2] See infra note 5 for a history of RP section 14-107(a).
[3] Maryland's courts of equity historically have exercised jurisdiction over partition actions. As Chief Judge Gilbert observed for our Court:

The authority of Maryland courts of equity to exercise jurisdiction over partition proceedings stems from 31 Henry VIII, ch. 1 ([1540]). That parliamentary statute remained an integral part of the Common Law of Maryland following the War of Independence waged between the colonies and the British crown. Subsequently, the General Assembly enacted a partition statute by Laws of 1785, ch. 72, § 12. The statute has been amended from time to time. The current version is found in [RP] section 14-107.
Lentz v. Dypsky, 49 Md.App. 97, 102, 430 A.2d 109 (1981) (citations and footnotes omitted).
One amendment added the sale in lieu of partition remedy. At common law, a court of equity could partition property but lacked authority to order a sale in lieu thereof. See Hardy v. Leager, 212 Md. 565, 569, 130 A.2d 737 (1957). In 1831, the General Assembly gave equity courts jurisdiction to order either partition or sale. See 1831 Md. Laws, ch. 311.
[4] The holding in Cambridge Discount Corp. v. Bd. of Educ. of Dorchester County, 181 Md. 455, 462-63, 30 A.2d 753 (1943), that "the court had no jurisdiction to try title to the property here concerned as between the parties in the bill for partition" is inapposite, because the plaintiff inconsistently claimed sole ownership of the property in question while seeking partition as a concurrent owner, and the suit pre-dated the merger of law and equity.